IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 06-338-2 |
| RUBEN VELEZ | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Ruben Velez and his co-defendant, Julio Morales, arranged to sell a kilogram of cocaine to an undercover Philadelphia Police Officer in exchange for $23,000, on August 30, 2005, on the street near Velez' North Philadelphia home. When the transaction was made, Velez was arrested. Police found a total of 140 grams of "crack" cocaine base and 1,040 grams of powder cocaine. Velez had recently been released from prison, after having served a sentence for one of his many parole violations, based on his two prior felony drug convictions. Those convictions, for which notice was properly given pursuant to 21 U.S.C. § 851, now compel a mandatory life sentence.

Notwithstanding the mandatory life sentence Velez faces, the Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.

> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.

> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing United States v. King, 454 F.3d 187, 194, 196 (3d Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006)). See also United States v. Smalley, 2008 WL 540253, *2 (3d Cir. Feb. 29, 2008) (stating that the Gunter directive is consistent with later Supreme Court decisions). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision. United States v. Grier, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. United States v. Langford, 2008 WL 466158, *8-11 (3d Cir. Feb. 22, 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Cooper, 437 F.3d at 329. See also Rita v. United States, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); United States v. Schweitzer, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view of the proper consideration of both the advisory guideline range, and the Section 3553(a) factors, which in this case must both yield to the mandatory life sentence compelled by Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 851.

I.  BACKGROUND

The defendant was convicted by jury of Counts One and Two of the indictment, charging him: in Count One, with possession with intent to distribute 50 grams or more of "crack" cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); and in Count Two, with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). This all arose from the defendant's possession with intent to distribute a total of approximately 140 grams of "crack" cocaine base and approximately 1,040 grams of powder cocaine, on August 30, 2005, in Philadelphia, Pennsylvania.

II.  SENTENCING CALCULATIONS.

A.  Statutory Maximum and Minimum Mandatory Sentences.

The maximum and minimum mandatory sentences that may be imposed on the defendant are: as to Count One, mandatory life imprisonment, a ten year mandatory minimum term of supervised release up to lifetime supervised release, an $8 million fine, and a $100 mandatory special assessment; as to Count Two, life imprisonment, with a ten year mandatory minimum term of imprisonment, an eight year mandatory minimum term of supervised release up to lifetime supervised release, a $4 million fine, and a mandatory $100 special assessment. Thus, the total maximum and mandatory minimum sentence is: mandatory life imprisonment, a

ten year mandatory minimum term of supervised release up to lifetime supervised release, a $12 million fine, and a $200 mandatory special assessment.

  B. <u>Sentencing Guidelines Calculation</u>.

  The Probation Office correctly calculated the defendant's advisory guideline range as follows: The 140 grams of "crack" cocaine and the 1,040 grams of powder cocaine are properly converted to a total marijuana equivalent of 2,168 kilograms of marijuana, which yields a base offense level of 32, pursuant to U.S.S.G. § 2D1.1(c)(4). An additional two points are added because a firearm was involved, which results in an adjusted offense level of 34. However, Velez' status as a career offender, under U.S.S.G. 4B1.1 dictates that his total offense level must be enhanced to Level 37. Similarly, the career offender designation raises Velez' criminal history category from IV (based on 9 criminal history points) to VI. The resulting suggested guidelines range is 360 months to life imprisonment. This is then superseded by the mandatory life sentence.

III. <u>ANALYSIS</u>.

  Although sentencing guidelines must always be calculated and considered, and the sentencing factors set forth in 18 U.S.C. § 3553(a) must also be addressed, this case is neither a "guidelines case," nor one in which the Court has discretion to alter the sentence based on 3553(a) factors. Rather, the sentence is entirely driven by the statutory mandatory life sentence compelled by 21 U.S.C. §§ 841(b)(1)(A) and 851, based on the conviction in Count One.

  A. <u>Consideration of the 3553(a) Factors</u>.

  The defendant committed a serious felony drug offense involving a substantial amount of "crack" and powder cocaine, shortly after having been released from incarceration,

based on the latter of his two prior felony drug convictions. Thus, even if a measure of mercy were possible, it would not be merited.

   B. <u>Consideration of the Sentencing Guidelines Factors</u>.

The sentencing guidelines calculation reflects the severity of the case, and the seriousness of the defendant's criminal history. The total offense level has been calculated at 37, and the defendant's criminal history category is VI, which would yield a suggested guidelines range of 360 months to life imprisonment. However, as previously mentioned, the defendant's two prior felony drug convictions, for which proper notice was given pursuant to 21 U.S.C. § 851, compel a mandatory life sentence.

IV. <u>DEFENDANT'S PRO SE OBJECTIONS</u>

The defendant has submitted a pro se letter articulating three objections to the PSI, and seven additional objections, requests, questions and complaints. The government will address them in order:

   1. <u>Prior Convictions</u>

Velez argues that his two prior felony drug convictions should be treated as one, because he was sentenced for them on the same date, citing U.S.S.G. § 4A1.2. This argument completely misses the mark, for two reasons. First, this guidelines section only deals with prior felonies for the purpose of career offender designation. It has no impact on 21 U.S.C. § 851. Thus, even if Velez' cases were consolidated for sentencing, and could not be considered as separate for career offender purposes, they would still nevertheless be two prior felony drug convictions, and would not affect the applicability of the mandatory life sentence.

Velez is also incorrect as to his guidelines designation as a career offender. His prior felony convictions are properly counted as separate, because they are in fact separate cases separated by at least one intervening arrest. Velez' first conviction is based on a February 19, 1993 arrest for possession with intent to deliver a controlled substance, based on Velez' sale of cocaine in the 3600 block of Marshall Street in Philadelphia. Velez' second conviction is for a June 9, 1995 arrest for possession with intent to distribute a controlled substance, based on his sale of crack and heroin in the 100 block of West Somerset Street. Thus, "the defendant was arrested for the first offense prior to committing the second offense." U.S.S.G. § 4A1.2(a)(2). Moreover, between these two arrests, Velez also sustained five additional intervening arrests on: 11/19/93 (drugs); 11/20/93 (drugs); 11/30/93 (DUI); 3/29/94 (drugs); and 8/18/94 (drugs). Thus, Velez' convictions must be counted separately, even though he was sentenced on the same date for both. Accordingly, Velez clearly qualifies as a career offender.

2. The Firearm Enhancement

Velez argues that he should not be subject to a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1), which clearly provides, "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." Id. Application note 3 further explains:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.

U.S.S.G. § 2D1.1(b)(1), note 3. In this case, the fully loaded, operable firearm was on the floorboard of the car that was used as a drug stash (and indeed transported the kilogram sold to the undercover officer), in close proximity to 140 grams of crack, 48 additional grams of powder

cocaine, and $14,380 in cash drug proceeds. That car was registered to Velez at his home address.

Velez erroneously argues that, because he was acquitted of the two firearms charges in the indictment (a 924(c) count and a 922(g) count), he cannot be held accountable for possessing that firearm at sentencing. The Third Circuit has expressly rejected this claim. United States v. Goggins, 99 F.3d 116, 119 (3d Cir. 1996), cert. denied, 520 U.S. 1161 (1997). Thus, although it has no practical effect on Velez' sentence, the firearm enhancement should apply.

    3.    The Notice and Enhancement under 21 U.S.C. § 851

Velez claims that the government filed no notice under 21 U.S.C. § 851, and that he was never notified of any such notice. These claims are specious. On May 18, 2007, the government filed an Information pursuant to 21 U.S.C. § 851, placing the defendant on formal notice that the defendant had two prior felony drug convictions. This notice properly set forth the date, place, case numbers, and nature of the convictions.

Velez had both actual and constructive notice of his prior convictions, and of the filing of the § 851 Information. The government had tendered a plea offer to Velez, whereby a guilty plea would avoid responsibility for one of his two prior felony drug convictions (resulting in a 20-year minimum mandatory, instead of mandatory life imprisonment). Velez flatly rejected this offer, and chose to proceed to jury trial. He must now live with the consequences of that decision.

4. <u>Request for Transcripts</u>

Velez requests copies of all transcripts, to prepare for issues on appeal. The transcripts are available, but his request is not ripe. At the appropriate time, defense counsel will undoubtedly be furnished with all appropriate transcripts. His request for grand transcripts is unsupported and meritless.

5. <u>Request for Rule 29 Motion</u>

Velez requests that a post-trial Rule 29 motion for judgment of acquittal be filed. As Velez is represented by counsel, the propriety of filing of such a motion is between Velez and his attorney. The government notes that a Rule 29 motion was filed at the end of the government's case, and was denied.

6. <u>Request for Credit for Time Served</u>

Velez asks whether he will be credited for the time he served in federal custody prior to sentence. Velez' credit for time served will be calculated by the U.S. Bureau of Prisons.

7. <u>Request for Prison Designation Close to Relatives</u>

Velez asks that he be sent to a prison in close enough proximity to be visited by relatives. Although prison designations are exclusively within the province of the Bureau of Prisons, the government has no objection to such a recommendation to be made by the Court.

8. <u>Request for Jury Questions</u>

Velez requests that he be furnished with the questions asked by the jury (of the Court) when deliberating. These questions are all in the record. Accordingly, Velez already has access to them.

9. Objection to Drug Determination and Allegation of Discovery Violation

Velez objects to the determination that the 140 grams for which he was convicted was the "crack" form of cocaine. This objection is of no moment, because Velez was indicted for, and convicted of, "possession with intent to distribute of, 50 grams or more, that is, approximately 140 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, . . ." The jury expressly found, pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000), that the amount of this drug the defendant possessed with intent to distribute was 50 grams or more. This finding was well supported by the trial testimony of Philadelphia Crime Lab chemist Bridget Brennan. As for Velez' claim that the laboratory report was not produced in discovery, this claim is flatly false. This report, marked as Government's Exhibit #20 at trial, was specifically disclosed in discovery on February 8, 2007, as Discovery Exhibit #19. The report is documented in discovery as follows:

"19. Phila. P.D. chemistry lab report re Lab I.D. #05-16457 (1 page)."

Discovery letter #1, to attorney Egan, dated 2/8/07.

10. Challenge to Subject Matter Jurisdiction

Last but not least, Velez challenges this Court's subject matter jurisdiction over this case. Congress determines what crimes shall be subject to federal prosecution. In making these determinations, Congress addresses and establishes the federal interests served by enacting its laws. The inherent interstate and international nature of illegal drug trafficking compelled Congress to enact the federal drug laws in Title 21 of the United States Code. It is well established that, for many drug crimes, including this one, there is concurrent jurisdiction,

between the United States and the individual states, to prosecute these crimes. The cases affirming the constitutionality of these statutes are legion.

Wherefore, the government requests that this Court sentence the defendant, as mandated by statute to a sentence of life imprisonment.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____

David E. Troyer
Assistant United States Attorney

CERTIFICATE OF SERVICE

_____I certify that on this day this pleading was electronically filed, and thus served on defense counsel:

Patrick J. Egan, Esquire
Fox Rothschild LLP
2000 Market Street
Philadelphia, PA 19107

 

David E. Troyer
Assistant United States Attorney

Date: May 8, 2008